Ronald D. RUSSO, Plaintiff—Appellant,

v.

BAXTER HEALTHCARE CORPORATION, et al., Defendants—Appellees.

No. 97–1824.

United States Court of Appeals, First Circuit.

Heard Jan. 6, 1998.

Decided March 25, 1998.

Steven E. Snow, with whom Thomas R. Noel, Partridge, Snow & Hahn, Providence, RI, were on brief, for appellant.

John Henry Pelzer, with whom Ruden, McClosky, Smith, Schuster & Russell, P.A., Ft. Lauderdale, FL, Edward L. Gnys, Jr. and Gunning, LaFazia & Gnys, Providence, RI, were on brief, for appellees.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and SHADUR,* Senior District Judge.

SHADUR, Senior District Judge.

Ronald Russo ("Russo") brought this diversity-of-citizenship action against Baxter Healthcare Corporation ("Baxter"), claiming that Baxter had violated his rights under the Rhode Island Uniform Trade Secrets Act, had interfered with his prospective business relationships and had negligently injured him by rendering his invention unpatentable in foreign countries. When the case went to

---

* Of the Northern District of Illinois, sitting by designation.

trial, Baxter exercised its right under Fed. R.Civ.P. ("Rule") 50(a) to move for judgment as a matter of law when Russo had completed his proofs and rested. That motion was granted, and the action was dismissed. Russo appeals, and we affirm the district court's final judgment in Baxter's favor.

### Standard of Review

■ We review the grant of a Rule 50(a) motion for judgment as a matter of law de novo, using the same standards as the district court (*Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1186 (1st Cir.1996)). All of the evidence and inferences drawn from the evidence are therefore considered in the light most favorable to nonmovant Russo, and we hereafter apply that principle in the *Facts* section.

■ As for the legal standard to be applied to the facts as so considered, *Andrade, id.* (quoting *Murray v. Ross–Dove Co.*, 5 F.3d 573, 576 (1st Cir.1993), and using the older Rule 50(a) term "directed verdict") teaches:

> A verdict may be directed only if the evidence, viewed from this perspective, "would not permit a reasonable jury to find in favor of the plaintiff[ ] on any permissible claim or theory."

But the plaintiff must provide " 'more than a mere scintilla' of evidence and may not rely on conjecture or speculation" to justify the submission of an issue to the jury (*Katz v. City Metal Co.*, 87 F.3d 26, 28 (1st Cir.1996)).

### Facts

In 1983 Russo began working with a company then called Superior Plastics Products Corp. and later known as Superior Healthcare Corporation ("Superior") under an agreement calling for him to develop new medical products in return for royalties based upon the success of his inventions. In 1989 Russo developed a new kind of closed-seal tracheal suction catheter, a device that uses an endotracheal tube to clear the airways of patients breathing on a mechanical ventilator. Russo's catheter had unique features, such as a rear irrigation port and a clamp valve, that distinguished it from others on the market.

Russo disclosed his idea for the improved catheter to Superior's President David Brodsky ("Brodsky"). Because Brodsky considered that Superior lacked the ability to market such a product, he sought another company to fill that role. To that end, in April 1990 Brodsky and Baxter discussed an agreement under which Baxter would manufacture and distribute the device.[1] As part of its evaluation of the product, Baxter sent prototypes of the catheter to two clinicians so they could conduct bench trials. Baxter did not require that either clinician sign a confidentiality agreement before doing so.

In May Brodsky told Russo about his discussions with Baxter (but not about the bench trials). Russo asked that Baxter be required to sign a confidentiality agreement, and Brodsky orally agreed to obtain one. Later in May Russo stopped working with Superior because of a dispute over money and issues unrelated to this action. Nonetheless, Russo retained some access to Superior's offices and observed that Superior continued to develop his catheter. He also learned that in June Baxter and Superior had entered into an Exclusive Distribution Agreement ("Agreement") that granted Baxter an option to obtain rights in the catheter.

Russo acted promptly in response to that discovery, sending two letters to Baxter asserting that he held the rights to the catheter. On June 14 he also filed an application with the United States Patent and Trademark Office ("PTO") for a patent on the catheter, and on June 25 he sued Superior and Baxter in Rhode Island Superior Court, seeking an injunction to prevent both companies from implementing the Agreement. Baxter and Superior promptly countered in July by submitting their own application to the PTO for a United States patent on the catheter. In addition Baxter, without Russo's knowledge, conducted additional field trials on the catheter from June to August. As part of those field trials, Baxter sent out samples of the device to 14 hospitals around

---

1. Because the early developments discussed here were so swift-moving, covering only a few months in 1990, the dates mentioned without a year designation refer to events during that year.

the United States to solicit practitioner comments. Again Baxter did not require that the participants in its field trials agree to keep the catheter confidential.

Over a year later, in late October 1991, Russo's patent attorney Robert Doherty ("Doherty") received a Notice of Allowance from the PTO informing him that Russo's United States patent application had been approved. Doherty paid the mandatory issuance fee and expected that the PTO would issue the patent within two or three months. In November 1991 Russo discussed filing patent applications in foreign countries with Doherty. They agreed on a tentative list of target countries, and Doherty sought out a consultant in foreign patent law because he lacked sufficient contacts and knowledge to file patents in most foreign countries.

On December 9, 1991 Baxter displayed Russo's closed suction tracheal catheter at the American Association of Respiratory Care convention in Atlanta.[2] Baxter demonstrated the catheter, incorporated it into a sales brochure and took some sales leads on it. Russo did not authorize any of those activities, and he did not discover what Baxter had done until several days after the convention.

Russo immediately told Doherty about Baxter's unauthorized disclosure of his product at the convention (at that point Russo did not know about the earlier bench trials and field tests). Without performing any research or consulting with his foreign patent expert, Doherty advised Russo that Baxter's disclosures at the convention had destroyed the novelty of his invention and thus made it unpatentable in any foreign country other than Canada or possibly Australia. Doherty told Russo that no foreign patent applications should even be filed, because he believed that no patents could issue after Baxter's publication at the Atlanta convention—or alternatively, that any patents that might issue would be invalid and worthless.[3]

Doherty's legal advice was dead wrong. Under the European Patent Convention and the law of most industrialized countries, an unauthorized disclosure of an invention does not immediately destroy its novelty (and thus foreclose the inventor's ability to patent the invention). Instead, such an adverse disclosure bars only patent applications made more than six months after the date of the disclosure (Art. 55 of the *Convention on the Grant of European Patents,* as printed in *European Patent Convention* (4th ed., Munich: European Patent Office, 1987)). That being so, Doherty should instead have advised Russo that he could still apply for foreign patents, because Baxter's actions at the Atlanta convention would not by themselves have affected Russo's ability to obtain such patents if applied for during the six-month window period after December 9, 1991.

What is critical to this litigation is that Russo relied upon Doherty's flawed advice and decided not to seek patents abroad. As a consequence, Doherty did nothing more to prepare any foreign patent applications.

On January 28, 1992 the PTO issued a patent to Russo on his catheter. That unquestionably barred Russo from obtaining any foreign patents because that publication of the catheter—made under the auspices of Russo himself, rather than by some unauthorized third party—made it a part of the "state of the art," so that it was not a "new" invention for foreign patent purposes. That destroyed the invention's eligibility for such patents (European Patent Convention Art. 54).

### Proceedings Below

On October 19, 1994 Russo sued Baxter in the district court alleging injury from Baxter's December 1991 publication of the catheter at the Atlanta convention. During discovery Russo first learned that earlier—in 1990—Baxter had conducted the bench trials

---

2. Although Baxter disputes whether the catheter shown at the Atlanta convention was identical to Russo's, we grant Russo that inference for the purposes of this appeal.

3. There was one exception: Russo did file for a patent in Canada, reflecting Doherty's advice

that Canada did not have a strict novelty requirement. Because that patent application is not the subject of this appeal, nor is it dealt with in the parties' briefs, we will not address the subject further.

and field tests on the catheter without any confidentiality agreements. Russo amended his complaint to encompass those earlier activities and asserted that the initial disclosures (1) had violated his rights under the Rhode Island Uniform Trade Secrets Act, (2) had interfered with his prospective business relationships and (3) had negligently injured him by rendering his device unpatentable in foreign countries.

As stated at the outset of this opinion, when Russo closed his proofs at trial, Baxter sought judgment as a matter of law under Rule 50(a). On May 29, 1997 the district court delivered an oral opinion granting Baxter's motion on all three counts because Russo had failed to establish that Baxter had either caused his injury or disclosed his trade secret. In addition, the district court determined that the statute of limitations had run on the trade secret count, that Russo had no prospective contractual relationships—thus eliminating the second count—and that Russo's claimed damages were purely speculative in any event. This appeal followed.

### Causation

■ All of Russo's claims depend on his ability to establish damages flowing from Baxter's actions—and that in turn depends on the requisite causal nexus between Baxter's actions and Russo's failure to obtain any valid foreign patents. But it has already been said that Russo never actually applied for the foreign patents because of Doherty's bad advice—because Doherty wrongly counseled Russo that Baxter's disclosure of his catheter at the 1991 Atlanta convention[4] had disqualified his invention for foreign patent purposes. That advice led the district court to conclude that Doherty's "egregious legal malpractice" had acted as an independent intervening cause that insulated Baxter from any liability for its behavior at the Atlanta convention.

Russo now claims that the Baxter-sponsored bench trials and field tests in 1990 had already caused the harm of which he complains. As Russo would have it, those tests—conducted over a year before he consulted with Doherty—make his failure to apply for patents in 1991 irrelevant, because he could not then have taken advantage of the six-month grace period even if Doherty had correctly understood foreign patent doctrine (as he did not).[5] Russo is essentially contending that although Doherty's legal analysis was wrong, his ultimate conclusion of no foreign patentability was right because Baxter's disclosures had earlier—in 1990—doomed Russo's ability to get the foreign patents.

■ That argument founders on a fundamental point of law and an equally fundamental point of logic. As to the former, Russo must show both causation in fact and proximate causation to recover against Baxter. Breach of a legal duty is a cause in fact of harm if that harm would not have occurred but for the breach (Restatement (Second) of Torts ("Restatement") § 432(1)(1965)). Here Russo has not shown, because he cannot show, that he would have obtained foreign patents but for Baxter's 1990 disclosures.

Whether Russo would indeed ever have obtained foreign patents if it had not been for Baxter's unauthorized disclosures is totally speculative—and it is rendered totally speculative by the fact that Russo never applied for such patents (so that, for example, it can never be known whether some wholly separate and different reason would have caused rejection of the applications). And of course Russo's failure to apply for them was not ascribable to Baxter, but was rather the consequence of Doherty having wrongly advised Russo that *any* unauthorized disclosure by Baxter had rendered his catheter unpatentable abroad.

Both as a matter of law and as a matter of logic, Russo cannot separate the strands of causation by pointing to Baxter's earlier disclosures via the 1990 bench trials and field trials, while ignoring the import of the bad legal advice imparted to Russo by Doherty.

---

4. We will assume for purposes of resolving Russo's appeal that Baxter acted tortiously in disclosing Russo's catheter at the Atlanta convention.

5. Again we will assume for purposes of Russo's appeal that those earlier disclosures, which were done without confidentiality agreements, rendered Russo's invention unpatentable.

To construct a hypothetical scenario in terms of that earlier unauthorized disclosure, Russo is compelled to recognize that it would not have made the slightest bit of difference if he had been aware of it from the outset (rather than learning of it via disclosure in this action): Even an immediate consultation with Doherty would have elicited the same wrong advice and would have caused the same non-filing of any foreign applications. In sum, Russo fails the "but for" precondition to recovery under any permissible view of the facts.

■ Russo nonetheless disputes whether Doherty's advice should shield Baxter from liability, arguing that even if Doherty's conduct was an intervening force, it was not a superseding cause. Intervening forces insulate a party from liability only if they are not foreseeable consequences of that party's original negligence or, in other words, if they are not "a natural and probable consequence of the initial tortfeasor's act" (*Walsh v. Israel Couture Post, No. 2274 V.F.W.*, 542 A.2d 1094, 1097 (R.I.1988)). Russo argues that Doherty's bad advice is not a superseding cause because it was a foreseeable consequence of Baxter's negligence.

■ Any such determination of whether a third party's intervening cause is also a superseding cause, so as to negate proximate causation on the part of the primary tortfeasor, is governed by traditional tort rules. Restatement § 442 sets forth the relevant factors in such a determination:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

In this instance it is really unnecessary to go beyond the first factor. Doherty's bad advice produced a harm radically different from that ascribable to Baxter's actions alone. After all, it is really uncertain whether foreign patents would have issued on the strength of Russo's claimed invention even in the absence of Baxter's unauthorized disclosures—and that uncertainty can never be resolved, because the foreign patent offices were never given that opportunity. By contrast, what is really certain is that the reason that the opportunity was never given (and that the opportunity would never have been given even in the context of the original disclosures)[6] was Doherty's wholly independent bad legal advice.

Although that alone would defeat Russo's attempted distinction between intervening force and superseding cause, the same conclusion is buttressed by the other Restatement factors. None of them suggests that the intervention of Doherty's wrong advice was foreseeable in any appropriate sense of that term. Not only was Doherty an unrelated third party acting outside of Baxter's control, but it can scarcely be found reasonably foreseeable that his legal advice would fall to the level of malpractice as it did. Doherty admitted that he lacked expertise in foreign patent law (his experience lay in domestic patent issues). Yet when presented with a question that depended upon knowledge of patent law in numerous foreign jurisdictions, Doherty counseled his client without troubling to conduct any research or to con-

---

6. Of course there is nothing to support any conjecture that Doherty would have done any better (or different) lawyering job if it had been the 1990 rather than the 1991 disclosures that had led to his analysis and his advice to Russo.

sult with a more knowledgeable lawyer. Not surprisingly, that reckless approach yielded advice clearly contrary to established foreign patent doctrine and misled Russo to believe that he was barred from pursuing foreign patents when in fact he was not.

Surely Doherty's legal advice was not only an independent force, but was also an extraordinary rather than a normal event. It must be concluded that Russo fares no better in his effort to pigeonhole Baxter's conduct through the use of labels such as "no-superseding-cause" than he has done in the earlier analysis in this opinion. We conclude that the district court was justified in concluding that Doherty's poor advice was an intervening force that insulated Baxter from liability.

That disposes of Russo's final causation argument. In sum, while resolving causation is generally within the jury's domain, the fact "[t]hat causation is *ordinarily* a fact question does not make it *invariably* a fact question" (*Peckham v. Continental Casualty Ins. Co.*, 895 F.2d 830, 837 (1st Cir.1990) (emphasis in original)). Here Russo has not tendered the required evidence that the injury of which he complains—the nonissuance of foreign patents—would not have been suffered but for Baxter's disclosures. Hence he has not satisfied *Katz*'s requirement that he show "more than a mere scintilla" of evidence on causation, and it was appropriate for the district court to have decided causation as a matter of law. And because the element of proximate cause is essential to each of Russo's claims, that calls for the denial of all three claims as a matter of law.

Indeed, it is worth noting that in addition to negating causation, Russo's failure to apply for foreign patents renders his damages claims wholly speculative as well. That inaction on his part has made it impossible for Russo and Doherty to identify with any specificity the countries in which they would have sought (and, but for Baxter's conduct, would even presumptively have obtained) patents and marketed the catheter.

Relatedly, Russo could only ask a jury to guess to what degree his invention would have been accepted commercially in those markets or how he would have profited from that acceptance. In fact, the actual sales performance of Russo's device suggests that his product would not be accepted in foreign markets. No company sells the catheter anywhere in the world, even though it could be manufactured and sold abroad unencumbered by any patent restrictions or obligations to pay royalties. That total absence from the market may reflect the flaws with the product identified in Baxter's field trials. Hence, lacking anything but sheer speculation as to his asserted damages, Russo's claims would also fail as a matter of law at that stage of analysis.

### Conclusion

In light of our determination on the causation issue, which reaches all three of Russo's claims, there is no need to revisit in any detail any of the district court's additional grounds for granting Baxter's Rule 50(a) motion. We **AFFIRM**.