United States Court of Appeals
For the First Circuit

No. 97-2015

DANIEL F. BRENNAN,

Plaintiff, Appellant,

v.

GTE GOVERNMENT SYSTEMS CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Torruella, Chief Judge,
Coffin and Bownes, Senior Circuit Judges.

Paul M. Stein with whom Thomas O. Moriarty was on brief for
appellant.
Arthur G. Telegen with whom Michael L. Rosen and Tracey E.
Spruce were on brief for appellee.

July 16, 1998

COFFIN, Senior Circuit Judge. Daniel Brennan's twenty-year-
long employment with GTE Government Systems Corporation ("GTE")
ended in March 1993 when he was terminated as part of a reduction
in force. Brennan, who was fifty years old at the time of his
termination, brought suit claiming that he was discharged as a
result of age discrimination in violation of the Age Discrimination
in Employment Act, 29 U.S.C. 621-634 ("ADEA"), and Mass. Gen.
Laws ch. 151B, 4 ("ch. 151B"). He also alleged a state law
misrepresentation claim, asserting that GTE fraudulently and
negligently misrepresented its policies and procedures for laying
off employees. The district court dismissed the state claim upon
summary judgment and granted judgment as a matter of law at the
close of evidence. Brennan challenges the rulings, and contests
the court's exclusion of certain evidence. We find error in one of
the evidentiary rulings relevant to establishment of a prima facie
case. We also conclude that there was sufficient evidence to
create jury issues on pretext and age discrimination. We therefore
reverse the directed verdicts for GTE on the federal and state age
discrimination claims but affirm the dismissal of the
misrepresentation claim.
I. Factual Background
Brennan began working at GTE in 1973 as a senior technician
and later held a series of different engineering positions. In
1986, he accepted a position as an integration and test engineer in
the Mobile Subscriber Equipment System ("MSE") division. Created
in 1986, the MSE division developed in response to a contract
between GTE and the United States Army for a comprehensive
communications system. In mid 1992, the division was reorganized
and Brennan was assigned to work in the Circuit Switching and
Systems Control department, headed by John Van Dolman. His job as
an integration and test engineer involved designing and overseeing
the MSE testing process. 
The record contains performance appraisals extending from 1976
to June 1992 consistently describing Brennan as meeting job
expectations. In late 1992, GTE assigned Brennan to fill in for
Carl Bredberg, a systems engineer whose job was to troubleshoot MSE
field problems, after Bredberg suffered a heart attack. 
In September 1992, MSE engineering department managers Van
Dolman and Kevin Flynn each prepared "Work Force Analysis Forms" in
anticipation of a reduction in force planned for November 2, 1992. 
These forms set forth positions to be eliminated, employees
performing those functions, and the names of individuals
recommended for termination. Van Dolman identified "System
Integration and Test Procedure Writer" as the function to be
eliminated and Brennan as the only employee for termination,
stating that Brennan lacked the skill mix to do the remaining work. 
The function eliminated by Flynn was "Senior System Engineer." Two
persons, each sixty-three years old, out of nine employees in that
position were identified for layoff. 
GTE, however, did not go forward with the planned reduction in
force. Instead, in December 1992, it notified employees of its
need to reduce staff as a result of general downsizing in the
defense industry, and offered a voluntary separation incentive
program and an enhanced early retirement program as "first step[s]
in realigning [GTE] staffing levels." GTE announced that the
programs were entirely voluntary, but would be offered only from
January 11, 1993 until February 5, 1993. Under the early
retirement program, available to all employees fifty and older,
Brennan could retire with pension and medical benefits that would
otherwise not be available to him until January 1, 1996. Brennan,
however, declined the offered program, believing that his seniority
would prevent him from being selected for layoff.
On December 7, 1992, Allen Sherwood, manager of the MSE
division at that time, developed a "rating and ranking" of
employees in the engineering division in anticipation of a layoff. 
Brennan was listed as the lowest ranking of thirty-three employees
at grade levels six and seven. The rating and ranking included
three categories of grades (3-5, 6-7, 8-11), and then listed the
employees who, out of a total of ninety-six, ranked among the
bottom thirty percent of all employees. On this list, Brennan
ranked ninety-third, or fourth from the lowest. Other terminated
employees had similar, although not quite as low, rankings as
Brennan. The ages of employees listed in the rating and ranking
were admitted as evidence. A high number of fifty and older
employees were ranked in the bottom thirty percent.
On February 26, 1993, Van Dolman prepared another Work
Analysis Form, identifying "System Integration Testing and Test
Procedure Writing" as the function to be eliminated. He listed
fourteen persons in this position prior to the reduction in force,
out of which five were proposed for separation. Brennan, who was
then fifty, along with four others (aged thirty-one, thirty-four,
fifty-seven and fifty-nine) were identified as "not possess[ing]
the skills to perform the remaining work available." The form also
set forth the specific skills these workers lacked, namely,
"detailed knowledge as required to troubleshoot and resolve System
level problems." Brennan, John Hartgrove (fifty-seven), and John
Hurley (thirty-seven), were also described as unable to perform
"design related Systems work." The listed reasons for termination
were "wrong skill mix to do work remaining" and "lowest performance
rating." Under "additional comments" was written, "rating and
ranking verifies above decisions."
Two days later, Van Dolman completed a Work Force Analysis
Form to reduce another section of the MSE division, System Design
Activities. Of the four persons he listed as working in that
section, he selected the only over fifty employee, Al Ricard, for
termination. The remaining three employees, all retained, were in
their late twenties or early thirties. Van Dolman described Ricard
as unable to "perform complex system engineering level design
tasks." Reasons for termination and additional comments
referencing the rating and ranking were the same as those listed
for Brennan. 
In late March 1993, Brennan was informed that he would be
terminated on April 2, 1993. Brennan testified that when he
approached Van Dolman about the decision, Van Dolman stated, "I was
told it wouldn't matter to you guys." Brennan believed "you guys"
referred to the fifty and older employees, and "wouldn't matter"
referred to the retirement packages Van Dolman believed to be
available to employees aged fifty and older. Van Dolman testified
that he could have made the statement, but did not recall doing so. 
Brennan also testified that during his employment with GTE, he and
other older employees were not given new computers or new
assignments, which were instead designated for younger employees.
The fifty and older employees discharged as a result of the
Work Force Analysis Forms, including Brennan, were the only fifty
and older employees remaining in the two MSE departments subject to
layoff. Other persons in this age group who had worked in these
departments chose voluntary separation or early retirement before
the layoffs. II. The Age Discrimination Claims
The central aspect of our review involves Brennan's appeal
from directed verdict on his age discrimination claims. The
district court found that Brennan had not established the required
prima facie case, had not shown that GTE's reason for discharging
him was pretextual, and did not present sufficient evidence to
support a finding of discriminatory animus. We review the grant of
a motion for judgment as a matter of law de novo, taking the facts
most favorable to Brennan. See Russo v. Baxter Healthcare Corp.,
1998 WL 125022, at *1 (1st Cir. March 25, 1998). Brennan must
provide "'more than a scintilla of evidence and may not rely on
conjecture or speculation' to justify the submission of an issue to
the jury." Id. (quoting Katz v. City Metal Co., 87 F.3d 26, 28
(1st Cir. 1996)). "The court, however, must 'not consider the
credibility of the witnesses, resolve the conflicts in testimony,
or evaluate the weight of the evidence.'" Andrade v. Jamestown
Housing Authority, 82 F.3d 1179, 1186 (1st Cir. 1996) (citing
Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. 1987)). A verdict
may be directed only if, applying these standards, the evidence
does not permit a reasonable jury to find in favor of Brennan. Seeid. 
As part of his age discrimination case, Brennan alleged
evidentiary errors, which we review for abuse of discretion. SeeKelley v. Airborne Freight Corp., 1998 WL 150958, at *8 (1st Cir.
April 7, 1998). We will not upset a verdict for "any error or
defect in the proceeding which does not affect the substantial
rights of the parties." Id. (quoting Fed. R. Civ. P. 61).
To review the court's determinations, we begin by setting
forth the burden shifting framework of the controlling
discrimination law. We note that until the last step in the
framework, discussed infra, Massachusetts law parallels federal
law. See Kelley, 1998 WL 150958, at *11. 
A. The burden shifting framework 
The plaintiff's initial burden to establish a prima facie case
of discrimination is "not onerous." Sanchez v. Puerto Rico Oil
Co., 37 F.3d 712, 719 (1st Cir. 1994) (quoting Texas Dep't of
Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "All that
is needed is the production of admissible evidence which, if
uncontradicted, would justify a legal conclusion of
discrimination." Id. In a reduction in force case like this one,
a plaintiff must demonstrate: (1) he was at least forty years of
age; (2) he met the employer's legitimate job performance
expectations; (3) he experienced adverse employment action; and (4)
his employer did not treat age neutrally or younger persons were
retained in the same position. See Hidalgo v. Overseas Condado
Ins. Agencies, Inc., 120 F.3d 328, 333 (1st Cir. 1997) (quoting
Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st
Cir. 1993)). Once the plaintiff establishes the prima facie
requirements, a rebuttable presumption that the employer engaged in
intentional age based discrimination attaches. See Woodman v.
Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995). 
The burden then shifts to the employer to articulate a
legitimate, nondiscriminatory reason for the decision. See Thomasv. Sears, Roebuck & Co., 1998 WL 219793, at *1 (1st Cir. May 8,
1998). If the employer meets its burden, the presumption of
discrimination vanishes. See Woodman, 51 F.3d at 1091. 
At this point, although the burden returns to the plaintiff in
both instances, state and federal law no longer parallel each
other. Under the ADEA, we inquire whether the evidence as a whole
would permit a reasonable factfinder to conclude that the proffered
reason was pretextual and the true reason was an age-based animus. 
See Hidalgo, 120 F.3d at 335 (quoting St. Mary's Honor Ctr. v.Hicks, 509 U.S. 502, 515 (1993)). Under ch. 151B plaintiff's
burden may be limited to demonstrating pretext, without a required
showing of discriminatory animus. See Kelley, 1998 WL 150958, at
*11; McMillan v. Massachusetts Soc'y for the Prevention of Cruelty
to Animals, 140 F.3d 288, 298 & n. 4 (1st Cir. 1998); Blare v.
Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 444-45,
646 N.E.2d 111 (1995). The distinction does not matter in this
case, however, as we find that plaintiff's evidence rises to the
level required by the ADEA to overcome a directed verdict. 
B. The prima facie case
It is undisputed that, as a fifty-year-old man who was
terminated by GTE, Brennan meets the first and third prongs of his
prima facie case. As to the second, Brennan has submitted
performance reviews dating back to 1976 and running through June
1992. He received acceptable rankings in virtually every
appraisal, although he only occasionally received the highest
ranking. For example, in the most recent ranking, covering the
period of January to June 1992, he was rated "met expectations" for
all categories of work, except in the area of "control/follow-up"
in which he was rated "exceeded expectations." Out of five
possible overall performance ratings, he was given a three, which
is described as "Employee meets all individual objectives as
established in the performance plan, performs all job
responsibilities to meet the requirements of the job and displays
a satisfactory degree of competence in the skills required of the
job." And, under "comments," the review stated, "Dan has the
ability to quickly become technically competent in tasks assigned
to him and accomplish the task in a timely manner to meet
schedules" and "Dan is very supportive to the changing priorities
required to support the overall mission."
GTE strives to characterize the "legitimate job expectations"
standard as covering what it maintains to be the new, downsized
requirements expected of the future MSE division. Such an
interpretation would render irrelevant the remaining burden
shifting requirements (the employer's articulation of a legitimate
reason would be incorporated, de facto, into the job expectation
standard, and the employee's obligation to demonstrate pretext
would have to be fought at the prima facie stage), and would be an
"onerous" endeavor, beyond the confines of a prima facie case. We
think the gauge therefore should be whether the employee has a
record of performing acceptably and meeting the demands of his job. 
Brennan's evidence is more than sufficient to meet the second prong
of the prima facie case. 
It was the fourth prong, lack of age-neutral decisionmaking,
where the district court found Brennan's evidence inadequate. Our
analysis demands that we consider whether the district court
properly excluded evidence as to other employees. "[L]ack of
neutrality may be manifested either by a facially discriminatory
policy or by a policy which, though age-neutral on its face, has
the effect of discriminating against older persons, say, by leading
inexorably to the retention of younger employees while similarly
situated older employees are given their walking papers." Vega v.
Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993).
A judge should not exclude relevant evidence, unless its
probative value is substantially outweighed by the danger of unfair
prejudice. See McMillan, 140 F.3d at 300 (citing Fed. R. Evid.
403). Evidence that other terminated fifty and older employees had
good employment records, skills in certain areas of the job, and
superior experience to retained employees is relevant to
determining whether a policy has the effect of discriminating
against older persons. Among the evidence offered by Brennan but
excluded by the district court was a comparison between work
performed by Tessmer, who was fifty-nine, and a thirty-year-old
employee who was retained. Brennan also proffered evidence
comparing the work record of Ricard, who was fifty-seven, rated at
a level of three, and discharged, with that of Craig Poole, who was
twenty-eight, given the same rating, trained by Ricard, and
retained. This evidence was also excluded. 
While "proof of a general atmosphere of discrimination is not
the equivalent of proof of discrimination against an individual,"
it "may add 'color' to an employer's decisionmaking process." Ruizv. Posadas de San Juan Assoc., 124 F.3d 243, 249 (1st Cir. 1997). 
Certainly comparative evidence in combination with data showing a
disproportionate number of terminated older employees is probative
of age discrimination. See Goldman, 985 F.2d at 1119 (excluding
numerical evidence because no comparative evidence was introduced). 
We are not faced here with determining whether this evidence proves
age discriminatory animus, but rather are concerned only with
whether this evidence indicates lack of neutrality. As we have
repeatedly emphasized, this is not a burdensome standard. SeeWoodman, 51 F.3d at 1091. 
Combined with the raw data indicating the ages of the persons
listed in the rating and ranking and terminated in the reduction in
force, the evidence regarding other employees and testimony by
Brennan indicating that the company gave preference to younger
employees in distributing computers demonstrate "lack of
neutrality" sufficient to meet Brennan's burden of establishing a
prima facie case.
C. Establishing pretext and discriminatory animus
It is undisputed that GTE has met its burden of production in
maintaining that it fired Brennan because MSE testing work was
diminishing and Brennan was among the lowest ranked employees
performing that type of work. Van Dolman testified that the MSE
workload, and specifically the number of plans and procedures
written and tests conducted, was diminishing. No longer a new
system, the MSE required less testing. David Orlando and David
Loomis, both GTE engineering supervisors, confirmed this. And
various GTE personnel testified that while Brennan was a good test
writer, he lacked the troubleshooting skills and technical
knowledge about the system that GTE most needed given the
downsizing of new MSE projects.
Brennan, in turn, must satisfy his burden of showing pretext,
and under federal law, discriminatory animus. He may rely on the
same evidence to prove both pretext and discrimination, as long as
the evidence rises to the level of meeting both requirements. See 
Udo v. Tomes, 54 F.3d 9, 13 (1st Cir. 1995). He may also rely on
the evidence pertaining to his prima facie. See Burdine, 450 U.S.
at 255 n.10. Brennan offers the following evidence to meet the
final hurdle: (1) his experience and performance reviews; (2)
GTE's failure to use standard procedure in creating the Work Force
Analysis Forms; (3) absence of a projected work analysis by GTE at
the time the Work Force Analysis Forms were prepared; (4) MSE
engineering work available after the layoff; (5) disproportionately
age-weighted layoffs; (6) favoritism by GTE toward younger
engineers; and (7) evidence showing that older qualified employees
were discharged and younger, less or equally qualified engineers
were retained. We now review these.
The performance reviews tell us that Brennan was a competent
employee who consistently performed within the expected job range,
but did not excel. Again, we note that in June 1992 his review
described him as having "the ability to become technically
competent in tasks assigned to him." A reasonable jury could find
that this belies GTE's claim that he lacked the technical
competence to troubleshoot problems arising in the MSE division,
or, at least, that in June 1992 GTE believed that Brennan was
capable of rapidly gaining the technical knowledge required by the
company. Support for this view can also be found in GTE's asking
Brennan in late 1992 to fill in for Bredberg, whose work primarily
involved troubleshooting system problems. 
We add to this the evidence presented by Brennan that GTE did
not use standard procedure in completing the Work Force Analysis
Forms. Deviation from established policy or practice may be 
evidence of pretext. See Lattimore v. Polaroid Corp., 99 F.3d 456,
466-67 (1st Cir. 1996). Robert Hetzel, Director of Human Services
at GTE in 1993, testified to the order in which the forms should be
completed: identify the function to be eliminated within a
particular department and the reason, list the employees performing
the function and evaluate them, identify the person or persons who
do not have the skills necessary to do the remaining work, and then
identify individuals for layoff, using the criteria, "wrong skill
mix," "poor performance," "lowest performance rating," and "lowest
seniority." GTE's seniority policy requires that, "where ability
is comparable, the senior employee will be retained." 
Van Dolman's testimony revealed that, instead of following
this procedure, he completed the March 1993 Work Force Analysis
Forms by simply filling in names of persons to be laid off that
were provided to him by Sherwood from the rating and ranking list
created in December 1992. As to the rating and ranking, Van Dolman
first provided Sherwood with a list, not in the record, ranking
persons in his department. From this list and those put together
by other engineering department heads, Sherwood compiled a rating
and ranking of all engineering employees. Sherwood explained that
he arrived at this list by consulting with department heads. He
described the "factors [that] came up in the discussions leading to
the merging of the three grades into the [lowest thirty percent]
column" as "principally value, in terms of doing the residual MSE,
and a lot of work that was coming." It is clear that seniority was
not considered in this ranking. Although thin, this evidence that
standard procedure was not followed is directly relevant to
Brennan's burden of demonstrating pretext. 
The record also raises questions about whether the layoffs
were needed. Brennan points to the two Work Force Analysis Forms
completed in September 1992 by Van Dolman and Flynn, in which he
was the only person slated for layoff in his group and two persons
were slated for layoff in Flynn's group. Of the nine senior system
engineers in Flynn's group in 1992, only four remained in 1993. 
This reduction, in combination with the number of fifty or older
employees who took early retirement, significantly reduced GTE's
work force -- by a greater number, in fact, than targeted in the
September 1992 Work Force Analysis Forms. 
As to Brennan's contention that the company lacked knowledge
of the projected work load, Sherwood testified that at the time he
created the rating and ranking he did not know how many test
writing positions remained for the future MSE work, and Flynn
testified that he did not remember any discussion during the
development of the rating and ranking concerning the specific work
remaining in the MSE. Brennan suggests from this that the
company's subsequent contention, that it needed to terminate test
writers, was not true, and simply a cover for its intention to lay
him and other older employees off through a constructive device of
a rating and ranking. While certainly limited, we cannot say that,
in combination with the remaining evidence, this testimony could
not have helped to lead a reasonable jury to suspect that the
reasons articulated by GTE for downsizing its workforce were not
true. 
Brennan also introduced evidence that GTE hired persons for
engineering positions and that MSE work was available after his
layoff. Such evidence, in undercutting the employer's proffered
reason for reducing the workforce, is probative of pretext. SeeMartin v. Envelope Division of Westvaco Corp., 850 F. Supp. 83, 91
(D. Mass. 1994). While GTE presented plentiful testimony that MSE
testing work was on the decline, we think that a factfinder could
reasonably conclude, looking at the advertisements for new
engineers and the number of persons hired, together with other
evidence, that the reductions were not in fact needed.
Finally, Brennan points to evidence of discriminatory animus
based on age: younger engineers received preference in the
distribution of new computers and new assignments, a high
proportion of older persons were discharged and ranked low in the
rating and ranking, and Van Dolman's statement, "I was told it
wouldn't matter to you guys." After examining all the evidence,
the jury might have concluded, as did Hetzel, that the
disproportionately high number of older persons ranked low and
discharged was not indicative of discrimination. But this
determination is rightly within the jury's province, not the
court's. And although Van Dolman testified that he could not
recall making the statement, supra, neither did he deny making it. 
In context, his testimony could leave a reasonable jury to conclude
that Van Dolman expected Brennan to receive full benefits and went
along with the layoffs with that assurance in mind.
We find therefore that Brennan has demonstrated sufficient
evidence of pretext and discriminatory age animus to withstand a
directed verdict. His age discrimination claims should proceed
before a jury.
III. The Misrepresentation Claim
Our review is de novo to determine whether the jury, drawing
all inferences in Brennan's favor, could reasonably have rendered
a verdict for him on this issue. See Coastal Fuels of Puerto Rico,
Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 196 (1st Cir.
1996); Fed. R. Civ. P. 56(c).
Brennan argues that he was misled by fraudulent and negligent
misrepresentation -- specifically, GTE's seniority policy -- to
decline participation in the Early Retirement Program. He alleges
that GTE had a duty to disclose to him that it would use a ranking
system rather than performance reviews to determine who would be
terminated, and that he suffered economic loss because he relied on
the performance reviews to gauge the likelihood that he would be
laid off from his job.
We can dispose of this issue quickly. Under Massachusetts
law, claims of fraudulent and negligent misrepresentation require
a false representation of material fact, knowledge of falsity or
carelessness on the part of the defendant, and a reasonable
reliance by the plaintiff. See Knapp Shoes, Inc. v. Sylvania Shoe
Mfg. Corp., 72 F.3d 190, 199-200 (1st Cir. 1995); see also Fox v.
F & J Gattozzi Corp., 41 Mass. App. Ct. 581, 587, 672 N.E.2d 547,
551 (1996) (requiring "justifiable" reliance by the plaintiff). 
Brennan offers no evidence that GTE represented to him that it
would only use the performance evaluations in ranking employees and
determining whether they were "comparable" for the purpose of
invoking the company's seniority policy. Even if a jury could
conclude that GTE made such a representation, Brennan's reliance on
that fact as security that he would not be laid off is not
reasonable or justifiable. Brennan was fairly consistently ranked
a three out of five. He presents no evidence that he knew the
number of persons the company would terminate (he offers the
opposite in support of his pretext argument), the levels at which
other persons were ranked, or the seniority other employees had in
comparison to him. It may be that GTE's layoff would require that
it terminate all level three employees and some level two
employees. In that case, Brennan's seniority would not have
impacted his retention. We therefore affirm the district court's
grant of summary judgment on this claim.
IV. Conclusion
On the record before us, we find that Brennan has introduced
sufficient evidence to submit his age discrimination claims to the
jury, but insufficient evidence on his misrepresentation claim. We
emphasize again that we make no credibility judgments and do not
weigh the evidence; our analysis has been restricted to determining
whether Brennan presented enough evidence to proceed before the
jury. We remand the age discrimination claims to the district
court.
Affirmed in part and reversed in part. Costs to appellant.