USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

Nos. 98-1256
 98-1668

 RHODA TANG,

 Plaintiff, Appellant,

 v.

 STATE OF RHODE ISLAND, DEPARTMENT OF ELDERLY AFFAIRS AND
 MAUREEN MAIGRET AND SUSAN SWEET,
 IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,
 
 Defendants, Appellees.
 

 APPEALS FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF RHODE ISLAND
 
 [Hon. Ernest C. Torres, U.S. District Judge]
 

 Before
 
 Boudin, Circuit Judge,
 Coffin and Bownes, Senior Circuit Judges.
 
 

 Dennis J. Roberts, II, with whom Gabriella G. Gaal, was on
brief for appellant.
 Rebecca Tedford Partington, Assistant Attorney General, for
appellees.

December 9, 1998

 
 

 COFFIN, Senior Circuit Judge. Plaintiff-appellant Rhoda
Tang ("Tang"), an Asian-American employee of the Rhode Island
Department of Elderly Affairs ("Department"), filed a complaint
against the Department alleging racial and gender discrimination,
harassment and retaliation. During the course of litigation, the
district court excluded certain evidence, granted judgment as a
matter of law for the Department, and granted attorney's fees to
the Department. Tang appeals each of these decisions. Because she
has failed to show that the district court's rulings on evidence
and judgment as a matter of law were erroneous, we affirm. We,
however, remand the attorney's fee decision for clarification.
 I. Background
 During the decade preceding this litigation, Tang,
individually and in her role as president of the local union, filed
a series of grievances against the Department. One such grievance,
filed in 1989 after the Department discharged her, went to an
arbitration hearing in May 1991. During that hearing, the parties
agreed to settle the grievance by reinstating Tang and had the
stipulated settlement entered as the arbitrator's award.
 Several years later, Tang filed another grievance, this
time claiming racial and gender discrimination as well as
retaliation for actions occurring before the 1991 hearing date. 
The Department moved to dismiss the complaint based on the res
judicata effect of the stipulated arbitration award. Judge Pettine
found that he could not decide the issue on the basis of the record
at the time, and consequently denied the motion. During the course
of that opinion, the court noted that at a recent conference the
parties had discussed the admissibility of evidence underlying the
1989 grievance. Although the parties had not briefed the
evidentiary issue, Judge Pettine stated that "evidence of [Tang's
1989] discharge will be admissible at trial" whether or not Tang's
claim could be based on the earlier termination.
 Defendants subsequently filed an interlocutory appeal on
grounds not relevant here. By the time the action was remanded to
the district court, Judge Pettine had retired, and the case had
been assigned to Judge Torres.
 Based on the statement in Judge Pettine's opinion, Tang
sought to introduce evidence underlying her 1989 discharge at
trial. Judge Torres found that the existence of the grievance was
relevant to Tang's retaliation claim, but the facts underlying it
were not because it had been resolved. Judge Torres therefore
ruled that Tang could introduce the fact that she had filed a
grievance but not the details of it.
 After the close of the plaintiff's case, Judge Torres
granted judgment as a matter of law in favor of the Department. He
ruled that Tang had presented no evidence that would support her
claims, and, in fact, the evidence contradicted her allegations.
 The Department then filed a motion for attorney's fees
under 42 U.S.C. 1988. Reiterating that the complaint was based
on "a number of minor perceived slights" and that there was
"absolutely no evidence" that the slights were race or gender-based,
Judge Torres granted the Department's motion for fees.
 II. Discussion
A. Admission of Pre-1991 Evidence
 Tang claims that Judge Torres erred in excluding the pre-
1991 evidence because Judge Pettine's ruling that the evidence
would be admissible was the law of the case. Whether the law of
the case doctrine bars subsequent litigation of a claim is an issue
of law subject to plenary review by this court. See Dopp v.
Pritzker, 38 F.3d 1239, 1245 (1st Cir. 1994). 
 Tang's reliance on the law of the case doctrine is
misplaced. As we recently said, that doctrine both prevents a
party from relitigating an issue decided by a lower court and
unchallenged on appeal, and requires a lower court to comply with
a superior court's instructions on remand. See Field v. Mans, 157
F.3d 35, --, 1998 WL 696000, at *4-5 (1st Cir. 1998). The doctrine
does not preclude all reconsideration of an issue already settled. 
See Bethlehem Steel Export Corp. v. Redondo Constr. Corp., 140 F.3d
319, 321 (1st Cir. 1998). "Interlocutory orders, including denials
of motions to dismiss, remain open to trial court reconsideration,
and do not constitute the law of the case." Perez-Ruiz v.
Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994). 
 At the time of Judge Pettine's comments, the parties had
not briefed whether the evidence was admissible; the Department had
made a motion to dismiss the complaint. Even if Judge Pettine's
comments constituted a ruling on admissibility, that ruling was
interlocutory and subject to reconsideration. The fact that the
issue was reconsidered by Judge Torres, rather than Judge Pettine,
is of no moment. See United States v. O'Keefe, 128 F.3d 885, 891
(5th Cir. 1997) ("[A] successor judge has the same discretion to
reconsider an order as would the first judge."). The law of the
case is simply not implicated in Judge Torres's ruling on the
admissibility of evidence.
B. Judgment as a Matter of Law
 Tang also alleges that the district court erroneously
granted judgment as a matter of law in favor of the Department on
her First Amendment freedom of speech claim. We review the
district court's decision de novo, taking the facts in the light
most favorable to Tang. See Russo v. Baxter Healthcare Corp., 140
F.3d 6, 7-8 (1st Cir. 1998). We may affirm the judgment only if
there "is no legally sufficient evidentiary basis for a reasonable
jury to find for [her]." Fed. R. Civ. P. 50(a). Tang must provide
"more than a mere scintilla of evidence and may not rely on
conjecture or speculation to justify the submission of an issue to
the jury." Russo, 140 F.3d at 7-8 (internal quotation marks
omitted).
 Tang claims the Department violated her First Amendment
free speech rights by retaliating against her for filing union
grievances, both on her own behalf and in her role as president of
the union. 
 The First Amendment guarantees every citizen the right
"to petition the Government for a redress of grievances." U.S.
Const. amend. I. Tang does not lose this right because she has
been employed by the government. See Connick v. Myers, 461 U.S.
138, 140 (1983). Nevertheless, absolute First Amendment protection
is not accorded to any grievance a public employee files against an
employer, without regard to content. If it did, anything she said
in the Department "would plant the seed of a constitutional case." 
Id. at 149.
 Instead, we employ a three part test to determine whether
Tang has an actionable First Amendment freedom of speech claim. 
First, the court must determine whether Tang made her statements
"as a citizen upon matters of public concern." Id. at 147. If the
speech involved matters not of public concern, "but instead . . .
of personal interest, absent the most unusual circumstances, a
federal court is not the appropriate forum in which to review the
wisdom of a personnel decision taken by a public agency allegedly
in reaction to the employee's behavior." Id. Second, the court
must weigh the strength of the employee's and the public's First
Amendment interests against the government's interest in the
efficient performance of the workplace. See Pickering v. Board of
Educ., 391 U.S. 563, 568 (1968). Third, if the employee's and the
public's First Amendment interests outweigh a legitimate
governmental interest in curbing the employee's speech, Tang must
show that the protected expression was a substantial or motivating
factor in an adverse employment action. See O'Connor v. Steeves,
994 F.2d 905, 913 (1st Cir. 1993).
 Tang's claims fail at the first step because she has not
demonstrated that her speech involved any public interest. In
assessing whether Tang's speech implicates public concerns, we
analyze "the content, form, and context of [the speech], as
revealed by the whole record." Connick, 461 U.S. at 147-48.
 Having done so, we agree with the district court that
Tang has failed to develop a viable First Amendment claim. Tang's
brief on appeal notes that she filed many grievances regarding
employment practices, but fails to provide any explicit description
of their content, form, or context. Nor does a review of the
record below shed any further light on the nature and circumstances
of the several dozen grievances Tang filed.
 The record, at best, permits speculation that the
grievances underlying her First Amendment claim were similar to the
six alleged acts of harassment and retaliation, none of which,
individually or together, involved public concerns. The first
such act occurred on March 4, 1994, when Tang was informed that her
position was to be abolished due to budget cuts. She was placed on
administrative leave with pay, and informed that she had the right
to "bump" another union employee with less seniority. Several days
later, the government realized that Tang's position could not be
abolished, rescinded the March 4 notice, and reinstated Tang to her
previous position. In essence, then, Tang's first complaint
involves the fact that she was erroneously placed on administrative
leave with pay for a few days. The second instance involved
relocating her workspace from the third floor to the first floor,
and sometime later to the second. Third, she complained that a
filing cabinet was moved to a different floor from her workspace
and placed alongside other filing cabinets. Fourth, she alleges
that she was instructed to take her phone calls at her own desk,
not elsewhere in the department. Fifth, she claims she was
harassed and retaliated against when her coworker repeatedly asked
her when she would no longer need a computer they shared. Finally,
the sixth alleged act of harassment and retaliation involved the
placement of a photocopier near the shared computer.
 None of these matters constitutes an issue of public
concern; they are all individual personal complaints about working
conditions. The Department retains the power to fashion an
appropriate response to these issues in the workplace. "[T]he
First Amendment does not require a public office to be run as a
roundtable for employee complaints over internal office affairs." 
Connick, 461 U.S. at 149. The district court appropriately granted
judgment as a matter of law on Tang's First Amendment claim.
C. Attorney's Fees
 Title VII and 1988 provide the court with the power to
award attorney's fees to prevailing parties in employment
discrimination and civil rights actions, respectively. See 42
U.S.C. 2000e-5(k); 42 U.S.C. 1988. Although courts are most
often faced with motions for attorney's fees by prevailing
plaintiffs, the statutes empower courts to grant fee requests by
whichever party prevails. While decisions to grant defendants
their fees are, and should be, rare, "a district court may in its
discretion award attorney's fees to a prevailing defendant . . .
upon a finding that the plaintiff's action was frivolous,
unreasonable, or without foundation, even though not brought in
subjective bad faith." Christiansburg Garment Co. v. EEOC, 434
U.S. 412, 421 (1978). In determining whether this standard has
been met, the court must assess the claim at the time the complaint
was filed, and must avoid the post-hoc reasoning that, because the
plaintiff did not ultimately prevail, the claim must have been
frivolous, unreasonable or without foundation. See Andrade v.
Jamestown Hous. Auth., 82 F.3d 1179, 1192 (1st Cir. 1996) (citing
Christiansburg, 434 U.S. at 421-22). 
 After considerable deliberation, the district court
reluctantly granted the Department's motion for attorney's fees on
the ground that the action was frivolous. We review its decision
for abuse of discretion. See Casa Marie Hogar Geriatrico, Inc. v.
Rivera-Santos, 38 F.3d 615, 618 (1st Cir. 1994). Under this
standard, we may not simply substitute our judgment for that of the
district court; we will reverse only if we are left with "a
definite and firm conviction that the court below committed a clear
error of judgment." Schubert v. Nissan Motor Corp. in U.S.A., 148
F.3d 25, 30 (1st Cir. 1998).
 Our review of the trial transcript and other record
materials persuades us that the district court's finding that the
action was frivolous was defensible. As the court correctly
concluded, there were two hurdles Tang was unable to surmount,
namely an actual injury, and causation between that injury and
race, gender or retaliation. Our discussion above demonstrates
that Tang's supposed injury amounts to no more than personal
displeasure with minor changes or inconveniences in her working
situation. Individually and collectively, any allegation that Tang
was injured by these incidents, much less suffered the adverse
employment action required for Title VII liability, is frivolous,
unreasonable and groundless.
 Similarly, there was no evidence that any of the alleged
actions were based on her race or gender or were done in
retaliation for filing union grievances. For instance, when her
position was mistakenly abolished, three other employees' positions
also were eliminated. Two were white males and one was a white
female. Similarly, a number of the incidents involved interactions
with other union employees. A claim that other union employees
retaliated against Tang for her filing grievances on behalf of the
union is transparently meritless.
 Rather than focusing on the strength of her claims, Tang
argues that she should be insulated from paying the Department's
attorney's fees for two reasons: 1) she relied on her lawyer to
determine how to pursue the claim; and 2) on an earlier occasion
she had received a letter from the Rhode Island Commission for
Human Rights ("RICHR") suggesting "probable cause" to find
discrimination had occurred. Neither of these arguments
undermines the district court's decision. As a sister circuit has
succinctly stated:
 The proper test for [an attorney's fee award
 to a defendant] is whether the claim itself is
 clearly meritless. . . . [I]f a claim is
 groundless, the mere fact that the plaintiff
 relies on his attorney's erroneous contrary
 advice does not relieve him of liability.

Davidson v. Keenan, 740 F.2d 129, 133 (2d Cir. 1984). Whether or
not Tang's reliance on her attorney's judgment was misplaced, she
is legally responsible for the filing of the action. See Prate v.
Freedman, 583 F.2d 42, 48 (2d Cir. 1978). See also Baker v.
Alderman, 158 F.3d 516, ---, 1998 WL 726667, at *7 (11th Cir. Oct.
19, 1998) ("In deciding whether to assess attorney's fees against
a Title VII plaintiff, a court should not consider the plaintiff's
counsel's role in filing or maintenance of a frivolous, groundless,
or unreasonable claim, or the plaintiff's apparent lack of personal
fault.").
 Tang also relies on the fact that on an earlier occasion
she received a letter from the RICHR finding "probable cause" to
believe discrimination had occurred. However, that letter involved
the 1989 discharge, and Tang's own complaint admitted that, as a
result of the 1991 stipulated arbitration award, she voluntarily
withdrew her charge of discrimination regarding that discharge. 
The fact that the RICHR had found probable cause in a charge she
subsequently agreed to withdraw is irrelevant to determining
whether the current action was frivolous, unreasonable, or without
foundation.
 In essence, Tang's argument is that she filed the claim
in good faith. Although finding bad faith makes a fee award to the
defendant more likely, it is not a prerequisite. See Local 285,
Service Employees Int'l Union v. Nonotuck Resource Assoc., Inc., 64
F.3d 735, 737 (1st Cir. 1995). Nor is good faith a defense to such
a claim. See Independent Federation of Flight Attendants v. Zipes,
491 U.S. 754, 759 (1989) ("the prevailing defendant could be
awarded fees . . . against the plaintiff whose suit was brought in
good faith, but only 'upon a finding that the plaintiff's action
was frivolous, unreasonable, or without foundation.'").
 Although we have found that the district court's
determination that the action was frivolous is supported, our
inquiry is not over. The transcript of the argument on the
attorney's fee motion indicates that the district court was
troubled with the prospect of awarding defendants their fees, and
found the decision to do so "distasteful." Nevertheless, the court
said the defendants were "entitled" to attorney's fees because the
action was frivolous. 
 Because the district court quoted the same language in a
prior similar case, see Pontarelli v. Stone, 781 F. Supp. 114, 126
(D.R.I. 1992), we believe that the term "entitled" comes from our
own opinion in Cloutier v. Town of Epping, 714 F.2d 1184, 1193 (1st
Cir. 1983), in which we said "[d]efendants are entitled to
attorneys' fees under section 1988 only when a court finds that the
plaintiff's claim was frivolous, unreasonable, or groundless."
(internal quotations omitted and emphasis added). The word
"entitle" embraces both the acknowledgment of a right and the
affording of a basis for making a claim. See Random House
Dictionary 649 (2d ed. unabridged 1987). See also Webster's Third
New International Dictionary 758 (1981) ("to give a right or legal
title to" and "furnish with proper grounds for seeking or claiming
something"). The latter meaning is the pertinent one here. In
using "entitled," we did not intend to require district courts to
grant fee requests once frivolity has been established. Rather, we
intended to state that the finding of frivolity was a necessary
prerequisite. Notwithstanding such a finding, the district court
still retains discretion to deny or reduce fee requests after
considering all the nuances of a particular case. See Andrade, 82
F.3d at 1193 (having "calculated the lodestar for a prevailing
defendant, the district court may deny or reduce that amount after
considering the plaintiff's financial condition.").
 It is not clear to us whether the district court
recognized its continued discretion. The transcript of the
attorney's fee motion hearing contains a number of ambiguous
comments by both parties and the court that could be interpreted to
the contrary. The Department argued that the issue was an "all or
nothing proposition"; the court could award the specific amount
requested, or nothing at all. Tang's attorney parroted the
Department's standard, and did not highlight the district court's
wide discretion even if the action were frivolous. In granting the
Department's fee request, the court noted it was troubled by the
fact that it was "required to pass on a request for attorney's fees
by a large institution such as a state, and the plaintiff is, as
usually is the case, just a working person." In going on to
describe its duty the court said that the task was simple: to
determine whether the action was frivolous.
 Although the record permits the decision made by the
district court, we are not sure whether the court actually
exercised its discretion in so ruling. The fact that it said the
defendants were "entitled" to the award, as "distasteful" as it might
have been, suggests that the court believed no discretion was
permitted. Because the court had a wide range of options
available, we remand to ensure that the court has the opportunity
to utilize its discretion fully. We leave to the district court's
discretion as well what steps to take in issuing a new judgment,
noting only the Supreme Court's warning that attorney's fee motions
"should not result in a second major litigation." Hensley v.
Eckerhart, 461 U.S. 424, 437 (1983).
 Accordingly, the judgment of the district court is
affirmed in part, vacated in part, and remanded for further action
consistent with this opinion. Appellee may receive half its costs.