<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-2296

         ALBERTO DOM NGUEZ-CRUZ and NYDIA NEGR N-RAMOS,

                    Plaintiffs, Appellants,

                               v.

                      SUTTLE CARIBE, INC.,

                      Defendant, Appellee.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Daniel R. Domnguez, U.S. District Judge]
                                
                                
                                
                            Before
                                
                    Lynch, Circuit Judge,
               Campbell, Senior Circuit Judge,
                and O'Toole, District Judge.  
                                
                                
                                
                                
 Harold D. Vicente-Coln, with whom Vicente & Cuebas was on
brief, for appellants.
 Graciela J. Belaval, with whom Martnez, Odell & Calabria was
on brief, for appellee.
  

February 2, 2000

                                
                                
 LYNCH, Circuit Judge.  In this age discrimination suit
brought by a plant manager whose employment was terminated when he
was 55 years old, the district court entered summary judgment for
the defendant, Suttle Caribe, on the recommendation of the
magistrate judge.  Both judges found that the plaintiff, Alberto
Domnguez-Cruz, made out a prima facie case of age discrimination
under the familiar McDonnell Douglas-Burdine-Hicks framework.  They
determined, however, that he had not overcome Suttle Caribe's
articulated non-discriminatory reason for the termination with
evidence sufficient to permit a rational factfinder to conclude
that the termination was motivated by age discrimination.
 The record shows that the employer has, at different
times, articulated to varied audiences different reasons for ending
the plaintiff's employment.  At times, Suttle Caribe has said that
the termination was not an issue of performance but was instead the
result of a business restructuring plan that involved the
elimination of the plant manager position.  At other times, Suttle
Caribe has claimed that the termination was based on the
plaintiff's job performance.  At still other times, Suttle Caribe
has said that violations of company policy and insubordination were
the reasons for the termination.  In addition to the potentially
inconsistent reasons the company gave for the termination, notes of
a conversation between a member of the personnel department and the
key decisionmaker in the plaintiff's termination include --
unusually and unfortunately for the company -- the phrases "age
descrim. [sic]" and "cover up."  Finally, the key decisionmaker
referred to the plaintiff more than once as an "old fart" in front
of two younger employees who would eventually assume many of the
plaintiff's job responsibilities.  One of those younger employees
in turn referred to the plaintiff as "el viejo" ("the old one" or
"the old man") and told another employee at least a year before the
plaintiff's termination that he had been offered the plaintiff's
job.  While the termination of the plaintiff's employment may prove
to have been innocent of age discrimination, these facts are surely
enough to raise genuine issues of material fact that should be left
to the jury.  We reverse entry of summary judgment and remand.
                               I
 Alberto Domnguez-Cruz began working for Suttle Caribe on
October 12, 1978.  He was hired to set up and manage Suttle
Caribe's plant in Humacao, Puerto Rico, and he continued in the
position of plant manager until his termination on September 22,
1995.  He was 55 years old at the time of his termination.  
Although his record was not spotless, all parties agree that
Domnguez-Cruz performed his job well.  He successfully launched
and nurtured Suttle Caribe's Puerto Rico operations and received
recognition for his efforts in the form of positive performance
evaluations, merit pay increases, and commendations.  In fact, his
immediate supervisor agreed that the plaintiff's 1993 performance
evaluation characterized him as "an outstanding employee and
manager[,] in general terms."  In addition, Domnguez-Cruz received
a merit pay increase for 1995.  
 In 1994, upper management at Suttle Caribe's parent
company, Suttle Apparatus, began a restructuring initiative,
designed to reduce costs and standardize operations by putting the
"right people in the right place."  Domnguez-Cruz directed this
initiative at Suttle Caribe and, as a result, was responsible for
terminating the employment of a number of employees in 1994.
Although the company now claims that the long-term plan had always
been to eliminate the  plant manager position, the plaintiff
testified that he was not aware that the restructuring initiative
might result in the loss of his job.
 In September 1995, Dean Ovitt, Vice President of
Manufacturing for Suttle Apparatus and Domnguez-Cruz's direct
supervisor as of late 1992, and Jeffrey Berg, President of Suttle
Apparatus, traveled to Puerto Rico to meet with Domnguez-Cruz and
to assess Suttle Caribe's operations.  During this time, Domnguez-
Cruz had conversations with both Berg and Ovitt pertaining to his
concerns with some of the proposed changes to the organizational
chart.  In addition, Berg and Ovitt discussed with Domnguez-Cruz
some of their complaints regarding his handling of certain
situations, including an accident involving a company vehicle, the
awarding of a contract to an employee, and the filing of
unemployment paperwork associated with an employee's leave of
absence.  On September 22, 1995, Ovitt, with the consent of Berg
and Curtis Sampson, the Chief Executive Officer and President of
the Board of Directors, informed Domnguez-Cruz that his employment
was being terminated.  Ovitt told Domnguez-Cruz that the plant
manager position was being eliminated as a part of the
organization's restructuring plan.
 Domnguez-Cruz and his wife filed suit against Suttle
Caribe in federal district court in May 1996, alleging age
discrimination under both federal and Puerto Rican law and claiming
violations of various other provisions of Puerto Rican law.  They
sought damages and a preliminary injunction reinstating Domnguez-
Cruz to his position and enjoining Suttle Caribe from
discriminating or taking any retaliatory action against Domnguez-
Cruz.  On September 23, 1997, Suttle Caribe filed for summary
judgment, arguing that Domnguez-Cruz had failed to make out a
prima facie case of age discrimination and that he had failed to
rebut its proffered non-discriminatory reasons for the termination.
The motion was referred to a magistrate judge, who recommended
granting summary judgment to Suttle Caribe.  The district court
agreed, concluding that although Domnguez-Cruz had put forth a
prima facie case of age discrimination, he had failed to rebut
Suttle Caribe's non-discriminatory reasons for the dismissal.  
Summary judgment was entered for Suttle Caribe and supplemental
jurisdiction over the Puerto Rican law claims was declined.
Domnguez-Cruz appealed to this court.
                               II
 Our review of the entry of summary judgment is de novo.  
See Thomas v. Eastman Kodak Co., 183 F.3d 38, 47 (1st Cir. 1999).
 The plaintiff offers two approaches to this case.  
First, he says that the ageist statements allegedly made by Ovitt
and another individual and the notes taken by a personnel manager
in a meeting with Ovitt constitute "direct evidence" of age
discrimination.  Because he produced direct evidence sufficient to
sustain his burden, Domnguez-Cruz says, summary judgment should
have been denied without resort to the McDonnell Douglas-Burdine-
Hicks burden-shifting framework.  The district court rejected this
argument, concluding that this evidence was not "direct evidence"
but instead constituted "stray remarks" that failed to "tie
[Domnguez-Cruz's] dismissal from Suttle to his age or to age
discrimination."
 Second, the plaintiff says that even under the McDonnell
Douglas-Burdine-Hicks framework, summary judgment was improper
because he produced evidence from which a jury could infer that the
employer's articulated reasons were pretextual and that age
discrimination was the real reason for his termination.  See
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-05 (1973);
Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256
(1981); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 515
(1993).  The district court rejected this argument, finding that
the circumstantial evidence presented by the plaintiff was
insufficient to carry the burden of establishing that "age-related
animus motivated [his] dismissal."
 When a plaintiff presents direct evidence of age
discrimination, the defendant must then either "deny the validity
or the sufficiency of the plaintiff's evidence," and "have the jury
. . . decide[] whether plaintiff has proved discrimination by a
preponderance of the evidence," see 8 Lex K. Larson, Employment
Discrimination  136.02, at 136-6 (2d ed. 1999), or "prove that it
would have made the same decision even if it had not taken the
protected characteristic into account," see Ayala-Gerena v. Bristol
Myers-Squibb Co., 95 F.3d 86, 95-96 (1st Cir. 1996), or both, if it
chooses.  See also Price Waterhouse v. Hopkins, 490 U.S. 228
(1989).  This burden makes it difficult, but not impossible, for
defendants to obtain summary judgment.  See Cardona Jimenez v.
Bancomercio De Puerto Rico, 174 F.3d 36, 40 (1st Cir. 1999);
Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d
17, 24 (1st Cir. 1998); but see Ayala-Gerena, 95 F.3d at 95-96
(referring to the defendant's obligation to "affirmatively prove
that it would have made the same decision" in the summary judgment
context).
 It is often quite difficult to draw the line between what
is "direct evidence" and what is "circumstantial evidence."  See,
e.g., Fernandes v. Costa Bros. Masonry, Inc., 1999 WL 1252868, at
*7 (1st Cir. Dec. 29, 1999) (noting that the First Circuit has yet
to choose among different approaches to "direct evidence" and
"circumstantial evidence" cases).  "In many cases, the line between
McDonnell Douglas, on the one hand, and Price Waterhouse, on the
other hand, is blurred."  F.W. Morse, 76 F.3d at 421.  In fact, one
might question whether these bright line articulations are so
helpful in the end.  See, e.g., Deborah C. Malamud, The Last
Minuet: Disparate Treatment after Hicks, 93 Mich. L. Rev. 2229,
2311 (1995) (suggesting that McDonnell Douglas does a poor job of
shaping pre-trial decisionmaking, particularly at the summary
judgment phase).
 In appeals after trial, this and other courts have
recognized the need for flexibility and have sometimes bypassed
these approaches and instead looked at whether the totality of the
evidence permits a finding of discrimination.  See F.W. Morse, 76
F.3d at 421 ("Discretion is sometimes the better part of valor, and
courts often wisely decide to sidestep difficult theoretical
questions if answers to them are not essential to the proper
resolution of a given case."); see also Carson v. Bethlehem Steel
Corp., 82 F.3d 157, 158 (7th Cir. 1996) ("The central question in
any employment-discrimination case is whether the employer would
have taken the same action had the employee been of a
different . . . age . . . and everything else had remained the
same.").  In this case, we take this course, examining the totality
of the evidence with the guidance of the McDonnell Douglas-Burdine-
Hicks framework and reserving judgment on the "direct evidence"
issue.
A.  McDonnell Douglas-Burdine-Hicks
 Under this framework, the plaintiff must first make a
prima facie showing of age discrimination.  See Burdine, 450 U.S.
at 252-53.  Because it is conceded for purposes of this appeal that
Domnguez-Cruz established a prima facie case, we do not describe
the required components.
 Once the plaintiff has made out a prima facie case, a
presumption that the employer unlawfully discriminated against the
employee is created and the burden shifts to the employer to
articulate a nondiscriminatory reason for the dismissal.  See
Hicks, 509 U.S. at 506-07.  The defendant's burden at this stage is
only a burden of production; the burden of proof remains with the
plaintiff at all times.  See id.  If the defendant meets this
burden, the presumption of discrimination created by the prima
facie case drops away and the burden of production shifts back to
the plaintiff to show that the employer's stated nondiscriminatory
reason was a pretext for discrimination.  See id. at 507-08.  At
this final stage of the McDonnell Douglas-Burdine-Hicks framework,
this burden "merges with the ultimate burden of persuading the
court that [the plaintiff] has been the victim of intentional
discrimination."  Burdine, 450 U.S. at 256; Thomas v. Sears,
Roebuck & Co., 144 F.3d 31, 33 (1st Cir. 1998) ("The plaintiff
bears the 'burden of proving that his years were the determinative
factor in his discharge, that is, that he would not have been fired
but for his age.'" (quoting Freeman v. Package Mach. Co., 865 F.2d
1331, 1335 (1st Cir. 1988)).
 Where, as here, the plaintiff has raised a prima facie
case and the defendant has met the burden of production, the
McDonnell Douglas-Burdine-Hicks framework becomes less relevant.  
See Hicks, 509 U.S. at 510.  At the summary judgment phase, "courts
should not unduly complicate matters . . . by applying legal rules
which were devised to govern the basic allocation of burdens and
order of proof."  Mesnick v. General Elec. Co., 950 F.2d 816, 825
(1st Cir. 1991) (internal quotation marks and citations omitted).  
Instead, the focus should be on the ultimate issue: whether,
viewing the "aggregate package of proof offered by the plaintiff"
and taking all inferences in the plaintiff's favor, the plaintiff
has raised a genuine issue of fact as to whether the termination of
the plaintiff's employment was motivated by age discrimination.  
Id. at 824-25; see Pages-Cahue v. Iberia Lineas Aereas de Espaa,
82 F.3d 533, 536 (1st Cir. 1996); Fennell v. First Step Designs,
Ltd., 83 F.3d 526, 535 (1st Cir. 1996); Olivera v. Nestle Puerto
Rico, Inc., 922 F.2d 43, 50 (1st Cir. 1990).
 We hold that there was evidence presented on summary
judgment from which a jury could (although need not) infer that the
employer's claimed reasons for terminating Domnguez-Cruz's
employment were pretextual and that the decision was the result of
discriminatory animus.  First, the evidence put forth by the
plaintiff in making his prima facie case clearly established that
Dean Ovitt, who was the plaintiff's direct supervisor and twelve
years younger than him, and Jeffrey Berg, who was two years younger
than the plaintiff, made the decision to terminate the plaintiff,
with Sampson's approval.  After his termination, Domnguez-Cruz's
job responsibilities were assumed by Ovitt, Mario Medina, Suttle
Caribe's Operations Manager, Nilda Torres, Suttle Caribe's then
Quality Control Supervisor, and Adalberto Sierra, Suttle Caribe's
Personnel Manager.  All four individuals are younger than
Domnguez-Cruz (although Sierra only by one year).  In fact, the
evidence showed that Domnguez-Cruz was the oldest Suttle Caribe
employee.  In addition, while Suttle Caribe claims that Luis
("Tony") Hernndez, the Costa Rica plant manager, did not assume
any of the plaintiff's job responsibilities, there is evidence that
Hernndez, who is ten years younger than the plaintiff, oversees
Medina and Sierra and was selected for this position "rather than"
the plaintiff.
 Second, and in addition to the evidence supporting
Domnguez-Cruz's prima facie case, the defendant presented
explanations for Domnguez-Cruz's termination that could be viewed
as inconsistent.  When Domnguez-Cruz was informed by Ovitt and
Janice Wielke, a Suttle Apparatus personnel manager, that he was
being dismissed, he was told that his position was being eliminated
as a result of the restructuring plan.  That same day, a memorandum
from Ovitt was distributed to all employees, informing them that
some "organizational changes" would be made as a part of the
"restructuring of the organization."  Ovitt's notes made shortly
before the plaintiff was informed of the decision support the
restructuring explanation:  "This reorganization is not a
performance issue.  This was a difficult decision of restructuring
the company to combine operation resourses [sic] and better utilize
resourses [sic] available."  When Domnguez-Cruz contacted Sampson
for an explanation, he received a letter stating that Hernndez had
been selected "rather than" himself to sit on the committee that
would oversee Suttle Caribe operations.  When the plaintiff met
with Sampson a week or so later, Sampson told him that while there
had been some complaints about his performance, they were "not
important."
 However, in its answer to Domnguez-Cruz's complaint,
Suttle Caribe changed its reasons for the termination of
plaintiff's employment.  It denied that the plaintiff was
discharged as a result of restructuring, instead claiming that
"Plaintiff was terminated for his repeated failure to abide by
company policies and to commit to the team efforts as required."  
At another point in the answer, Suttle Caribe stated that the
plaintiff's termination "was determined exclusively because of his
violations to [sic] company policies" and referred to his
"inability to commit to the managerial efforts directed by the
parent corporation, covering up employee misconduct which required
termination, and his failure to abide by previous commitments to
his immediate supervisor with respect to team work and
reorg[an]ization."
 The depositions betray a similar inability to settle on
an explanation for Domnguez-Cruz's dismissal.  At one point, Ovitt
stated that "[t]he reason that he was terminated was because of his
performance, it was performance issues."  At another point, Ovitt
acknowledged that he told "the employees of the corporation, other
than the executive staff," that the dismissal was not related to
performance.  Later, he indicated that the plaintiff was fired
because of "his refusal to take the direction that the company was
going" and his insubordination.  Finally, Ovitt referred to
Domnguez-Cruz's failure to abide by company policies.  Sampson, in
contrast, stated in his deposition that Domnguez-Cruz was doing a
"good job" and was "very adequate" and that "[t]he primary reason
for termination was always that they wanted to eliminate the
position, they didn't think it was necessary any more."
 A company may have several legitimate reasons to dismiss
an employee.  But when a company, at different times, gives
different and arguably inconsistent explanations, a jury may infer
that the articulated reasons are pretextual.  See Thurman v. Yellow
Freight Sys., Inc., 90 F.3d 1160, 1167 (6th Cir. 1996) ("An
employer's changing rationale for making an adverse employment
decision can be evidence of pretext."),  opinion amended by 97 F.3d
833 (6th Cir. 1996); Kobrin v. University of Minnesota, 34 F.3d
698, 703 (8th Cir. 1994) ("Substantial changes over time in the
employer's proffered reason for its employment decision support a
finding of pretext."); Castleman v. Acme Boot Co., 959 F.2d 1417,
1422 (7th Cir. 1992) ("A jury's conclusion that an employer's
reasons were pretextual can be supported by inconsistencies in or
the unconvincing nature of the decisionmaker's testimony.");
Alvarado v. Board of Trustees, 928 F.2d 118, 122-23 (4th Cir.
1991); Schmitz v. St. Regis Paper Co., 811 F.2d 131, 132-33 (2d
Cir. 1987).  A jury could, at trial, accept the employer's
explanation that it initially chose not to discuss the plaintiff's
performance issues publicly out of a desire to avoid humiliating
him.  This explanation, however, does not fully explain its failure
to mention these issues to Domnguez-Cruz when he inquired as to
the reasons for his dismissal.  At the summary judgment stage,
viewing the evidence as a whole and given that the court should not
engage in credibility assessments, see Brennan v. GTE Gov't Sys.
Corp., 150 F.3d 21, 26 (1st Cir. 1998), the evidence in this case
can support an inference of pretext.
 Third, and further supporting a possible inference that
Suttle Caribe's explanations are pretextual, there is evidence
suggesting that restructuring was not the reason for the
termination of the plaintiff's employment.  First, there is
evidence that, in 1994 or earlier, Ovitt had offered the plant
manager position to Medina.  Medina told another employee that he
was considering taking the offer.  Second, the plaintiff had no
prior notice that the company was considering eliminating the plant
manager position, even though he was integrally involved in the
restructuring efforts at Suttle Caribe.  Third, while Suttle Caribe
maintains that the plan had always been to eliminate the plant
manager positions in both Puerto Rico and Costa Rica, the position
in Costa Rica had not, as of the time of the depositions, been
eliminated.
 The performance explanation also suffers from some
deficiencies.  At least one of the alleged violations of company
policy upon which Suttle Caribe relies occurred approximately two
years before Domnguez-Cruz was dismissed, and his 1993 evaluation,
at roughly the same time, called him an outstanding employee.  And
there is at least some question whether Domnguez-Cruz was directly
responsible for two of the alleged violations.  Further, the fact
that the other employees involved in some of these violations were
not terminated may cast doubt on the veracity of this explanation.  
Finally, Domnguez-Cruz's record at the company may undermine the
performance explanation.  He had a strong record with the company,
received a positive performance evaluation in 1993, was given a
letter of commendation from Berg in August of 1994, and received a
merit pay increase in 1995.  A jury could conclude that the alleged
performance problems only arose once the plaintiff came under
Ovitt's supervision; Ovitt terminated the plaintiff within three
years of becoming his supervisor.
 Finally, evidence of age-related comments could support
an inference of pretext and discriminatory animus.  The record
reflects that Ovitt -- the plaintiff's direct supervisor and the
key decisionmaker regarding his termination -- referred to the
plaintiff, more than once, as an "old fart" in front of other
employees, including Medina and Sierra.  Medina, in turn, was heard
by another employee referring to Domnguez-Cruz as "el viejo" ("the
old one" or "the old man") in the course of saying that he had been
offered Domnguez-Cruz's job.   
 In addition, there are the notes made by Wielke, the
personnel manager.  Wielke, in some way, participated in the
dismissal and flew to Puerto Rico with Ovitt to inform plaintiff
that his employment was terminated.  Her notes about the decision
to terminate the plaintiff contain his full name and include the
phrases "cover up so Alberto doesn't," "all over 40," "Tony --
age," and "age descrim. [sic]."  Perhaps the discussion
memorialized in these notes was about how to comply with the law,
but, if so, the "cover up" language is an odd choice.  These notes,
as well as the remarks made by the key decisionmaker and another
employee, could lead a reasonable jury to infer that age
discrimination was at work.
 This recitation of the facts has taken the evidence in
the light most favorable to the plaintiff.  See Levy v. Federal
Deposit Ins. Corp., 7 F.3d 1054, 1056 (1st Cir. 1993).  It is not
a description of what the jury must find, but is rather a
description of the permissible inferences that could be drawn from
the facts and that suffice to defeat summary judgment.  "The
plaintiff does not have to prove by a preponderance of the
additional evidence that discrimination was in fact the motive for
the action taken.  All a plaintiff has to do is raise a genuine
issue of fact as to whether discrimination motivated the adverse
employment action."  Olivera, 922 F.2d at 50.  We find that
Domnguez-Cruz has done so and should be allowed to take his claims
to a jury.  See Hodgens v. General Dynamics Corp., 144 F.3d 151,
167 (1st Cir. 1998) ("[W]here a plaintiff in a discrimination case
makes out a prima facie case and the issue becomes whether the
employer's stated nondiscriminatory reason is a pretext for
discrimination, courts must be 'particularly cautious' about
granting the employer's motion for summary judgment." (citation
omitted)); Mulero-Rodrguez v. Ponte, Inc., 98 F.3d 670, 677 (1st
Cir. 1996) (reversing summary judgment and noting that
"determinations of motive and intent, particularly in
discrimination cases, are questions better suited for the jury"
(internal quotation marks and citation omitted)); see also Brennan,
150 F.3d at 30 (reversing directed verdict entered for defendant in
ADEA case); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1092 (1st
Cir. 1995) (reversing summary judgment for defendant in ADEA case).
B.  Direct Evidence
 We defer any decision as to whether plaintiff has
produced direct evidence of discrimination in light of our holding.  
Should such a decision prove material it would be better made after
the development of the evidence.  See, e.g., W. Carl Jordan,
Employment Discrimination Law 223 (1998 Supp.); see also Fernandes,
1999 WL 1252868, at *5 (noting that a plaintiff "may elect to
proceed simultaneously on both fronts" and that "the trial court,
at an appropriate stage of the litigation, will channel the case
into one format or the other").  It is true the alleged comments
were about the plaintiff -- not other people -- and most were
purportedly made by those involved in the termination.  The
comments in Wielke's notes have to do with terminating the
plaintiff's employment and are contemporaneous with the termination
decision.  However, the summary judgment record gives little
context to the remarks and comments.  There is, for example, no
explanation from the personnel manager about what her notes meant.  
Nor is there any evidence from the plaintiff or the two
subordinates concerning the context in which Ovitt made his
lamentable comments.  Hence it would be premature for us to
categorize this evidence now, both because the district court will
be better able to do so on a more complete record, and because
whether or not there will be any practical need to do so for
purposes of deciding this case is not yet apparent.
 The decision of the district court is reversed.  We
remand for proceedings consistent with this opinion.
 So ordered.

</body>

</html>