# United States Court of Appeals
## For the First Circuit

No. 18-1990

ANTONIO SANTANA-VARGAS,

Plaintiff, Appellant,

v.

BANCO SANTANDER PUERTO RICO; SANTANDER FINANCIAL SERVICES, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Carlos R. Paula, with whom Jaime E. Picó-Rodríguez and Labor Counsels, LLC were on brief, for appellant.
Alberto J. Bayouth-Montes, with whom Carlos E. George-Iguina and O'Neill & Borges LLC were on brief, for appellees.

January 27, 2020

**KAYATTA**, **Circuit Judge**. Antonio Santana-Vargas ("Santana"), a former branch manager at Santander Financial Services, claims that Santander Financial Services and Banco Santander fired him because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and Puerto Rico law. The district court granted summary judgment to the defendants on Vargas's ADEA claim and relinquished supplemental jurisdiction over his claims under Commonwealth law. See Santana-Vargas v. Santander Fin. Servs., Inc., No. 15-cv-1521, 2018 WL 9616878 (D.P.R. Sept. 4, 2018) (unpublished opinion). Santana now appeals the district court decision. For the following reasons, we affirm.

## I.

We set forth the facts of this case "in the light most favorable to" Santana. Del Valle-Santana v. Servicios Legales de Puerto Rico, Inc., 804 F.3d 127, 128 (1st Cir. 2015). Santana began work as a collections agent at Island Finance in 1986. He received various promotions over the years and ultimately became a branch manager in 2001. In March 2006, Santander Financial acquired Island Finance, and Santana became an employee of Santander Financial (and, according to Santana, of Banco Santander). Santana's success at the company eventually stalled. Beginning in 2009 and continuing through 2013, Santana's supervisors documented his and his branches' underperformance. In

March or April 2014, Santana was placed on a six-month performance improvement plan. The defendants' reports from May and June of 2014 state that Santana failed to comply with the plan. He was fired in August -- before the plan ran its full course. By that time, Santana was forty-nine years old and had worked at Island Finance or Santander Financial for twenty-eight years. His replacement was thirty-two.

## II.

## A.

Santana offers no direct proof of age discrimination. Rather, to prove that he was fired on account of his age, he relies on indirect proof under the so-called McDonnell-Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973). Under that framework, he can make out a prima facie case by showing that:

> (i) [he] was at least 40; (ii) [his] work was sufficient to meet the employer's legitimate expectations; (iii) [his] employer took adverse action against [him]; and (iv) either younger persons were retained in the same position upon [his] termination or the employer did not treat age neutrally in taking the adverse action.

Del Valle-Santana, 804 F.3d at 129-30 (citing Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 26 (1st Cir. 1998)). To rebut the presumption of discrimination generated by a prima facie case, the defendants must then "articulate a legitimate, nondiscriminatory

reason for dismissing the employee." Id. at 130. If the defendants successfully do so, "the presumption vanishes and the burden shifts once again." Id. At that point, Santana must point to evidence sufficient to show that the defendants' given reason was pretextual and that age was the true cause of his termination. Id.

The district court found that Santana's claim failed at the first step because he failed to "put forth evidence that he was complying with the legitimate job performance expectations for his position." See Santana-Vargas, 2018 WL 9616878, at *11-12. "[O]ut of an abundance of caution," the district court also went on to apply the entire burden-shifting framework in its analysis, finding that Santana failed at each step. Id. at *12-17. We review the district court's reasoning de novo. Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015).

**B.**

The requirement that the plaintiff show he was meeting the defendants' legitimate performance expectations is "not particularly onerous." Meléndez v. Autogermana, Inc., 622 F.3d 46, 51 (1st Cir. 2010) (citing Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)); see also Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 (1st Cir. 2009) ("We have described this prima facie showing as 'modest,' and a 'low standard.'" (quoting Rathbun v. Autozone, Inc., 361 F.3d 62, 71

- 4 -

(1st Cir. 2004) and Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44 (1st Cir. 2002))). Whether the district court correctly found that Santana failed to make this prima facie showing poses a close question that we need not decide.

We instead take advantage of the district court's caution and assume that Santana has established a prima facie case. We train our focus on whether a reasonable jury could find pretext. The defendants clearly advanced a legitimate reason to terminate Santana: his poor performance documented by over three years of poor reviews. And for the reasons set out by the district court, Santana has failed to show that his poor performance reviews were pretextual. See generally Santana-Vargas, 2018 WL 9616878; see also Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 86 (1st Cir. 2002) ("[W]hen a lower court accurately takes the measure of a case and articulates a cogent rationale, it serves no useful purpose for a reviewing court to write at length."). We also agree generally with the district court's analyses of Santana's allegations of disparate treatment and a hostile work environment (including possibly biased remarks by higher-ups in the companies and the deprivation of tools to accomplish business goals). See Santana-Vargas, 2018 WL 9616878, at *14–15, *16–18.

We add only a response to Santana's argument on appeal that the defendants' decision to let him go before he completed his six-month performance improvement plan showed pretext. The

March 2014 letter setting out the plan made clear that Santana could lose his job if he "fail[ed] to comply [with] and successfully surpass" the minimum requirements set forth in the plan. The plan neither stated nor implied that Santana could not be fired until six months had run. Rather, it pointed to an expected performance score of 2.65, and stated that he would be "monitored monthly . . . for a period of six (6) months," warning that a failure to comply could result in dismissal. Santana signed that letter on April 4, 2014. He then promptly failed to meet the minimum performance requirements in April and May, in each month rating even less than he had before the plan began. So it was not as if Santana was not given a chance to show that he could meet expectations for six consecutive months. Rather, he failed from the outset. Santana does argue that his branch's "production numbers" improved in May, June, and July 2014. But he makes no argument that the numbers satisfied the plan's minimum requirements. On such a record, we see no reasonable basis for inferring age discrimination from the fact that the defendants chose not to overlook his initial and repeated failures.

Santana also points to another employee whose performance improvement plan was extended after the first six months. But there is no evidence in the record about that other employee's work, her progress during her improvement plan, or her history of performance at the company. Although evidence "that an

- 6 -

employer has deviated inexplicably from one of its standard business practices," can demonstrate pretext, <u>Kouvchinov</u> v. <u>Parametric Tech. Corp.</u>, 537 F.3d 62, 68 (1st Cir. 2008), Santana has failed to put forward evidence to establish any real deviation here.

## c.

The district court declined to exercise supplemental jurisdiction over Santana's state-law claims given its decision that the ADEA claims failed. <u>See</u> <u>Santana-Vargas</u>, 2018 WL 9616878, at *18. Although state law claims should often be dismissed when "the federal claims are dismissed before trial," <u>United Mine Workers of Am.</u> v. <u>Gibbs</u>, 383 U.S. 715, 726 (1966), "a district court must exercise 'informed discretion' when deciding whether to assert supplemental jurisdiction over state law claims," <u>Redondo Const. Corp.</u> v. <u>Izquierdo</u>, 662 F.3d 42, 49 (1st Cir. 2011) (quoting <u>Roche</u> v. <u>John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 256–57 (1st Cir. 1996)). Courts must consider "concerns of comity, judicial economy, convenience, and fairness." <u>Id.</u> (citing <u>Roche</u>, 81 F.3d at 257).

We have previously found that a district court abused its discretion in dismissing state-law claims where the case had been pending for six years, the trial was only four days away, the discovery that had already been taken was relevant to the state-law claims, the plaintiff would have faced a significant burden in

shifting to litigate the state-court claims in Spanish instead of English, and principles of comity did not favor dismissal because the state-law issues required only an additional damages calculation. Id. at 49-50. We have also found that a district court acted within its discretion by continuing to exercise supplemental jurisdiction where "[t]he litigation had matured well beyond its nascent stages." Roche, 81 F.3d at 257.

This litigation was also well beyond its nascent stages, having been pending for three years by the time it was dismissed. Although a final trial date was not yet set, discovery was complete, presumably largely in English. And there is clearly some substantive overlap between the federal and Commonwealth claims. Nevertheless, the premise of Santana's continuing litigation will be that the Commonwealth causes of action are indeed materially different. And the defendants, who would benefit most from retention if the differences in the applicable law are not material, raise no objection to the district court's decision. All in all, while retention was certainly an option, the district court did not exceed the outer boundary of its discretion in declining to exercise continued supplemental jurisdiction.

**III.**

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants and its dismissal without prejudice of the non-federal claims.